IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINGER OUTLAW, for herself and all others similarly situated,<br>　　　　Plaintiff | : | No. 3:11cv602 |
| v. | : | (Judge Munley) |
| SECURE HEALTH L.P. and HOMETOWN NURSING & REHABILITATION CENTER,<br>　　　　Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is plaintiff's motion for the conditional class certification of similarly situated persons pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b).  (Doc. 17).  The motion has been briefed and is ripe for disposition.

**Background**

Plaintiff Ginger Outlaw (hereinafter "plaintiff"), a resident of Carbon County, Pennsylvania, worked as a Licensed Practical Nurse at Defendant Hometown Nursing & Rehabilitation Center (hereinafter "Hometown") from October 6, 2010 to January 27, 2011.  (Doc. 1, Compl. (hereinafter "Compl.") ¶ 5; Doc. 17-2, Ex. A, Outlaw Decl. (hereinafter "Outlaw Decl.") ¶ 2).  During this time period, plaintiff worked several different shifts, in various parts of the facility and with many other employees.  (Outlaw Decl. ¶ 3).  Hometown is located in Tamaqua, Pennsylvania and is owned and controlled by Defendant Secure Health, L.P. (hereinafter "Secure Health") (Compl. ¶ 7; Doc. 2, Answer (hereinafter "Answer") ¶ 7).  Secure Health is a limited partnership that also owns and controls the Pennsylvania-based

Mt. Carmel Senior Living Community (hereinafter "Mt. Carmel") and the Shenandoah Manor Nursing Center (hereinafter "Shenandoah"). (Compl. ¶ 6; Doc. 16, Stipulation dated Dec. 12, 2011).

Plaintiff contends that she was subjected to unofficial policies requiring her to perform uncompensated work in excess of her 40-hour work week. Plaintiff asserts that other employees at Hometown, Mt. Carmel and Shenandoah were subjected to similar unofficial policies.

Specifically, plaintiff asserts that she arrived at work approximately ten minutes before the start of her scheduled shifts pursuant to Hometown's "timeliness" policy. (Outlaw Decl. ¶¶ 4-6). When she arrived, Hometown management instructed plaintiff to perform pre-shift work, which included receiving pass down instructions, meeting with supervisors, checking equipment, collecting pills for distribution to patients and other duties. (Id. ¶¶ 7-8). Although Hometown's timekeeping system tracked plaintiff's pre-shift work time, plaintiff was not paid accordingly for this time because Hometown "rounded" her time down. (Id. ¶ 9). Because of her personal experiences and conversations with staff, plaintiff believes that other Secure Health employees were also subjected to, and affected by, the same pre-shift policy. (Id. ¶ 10).

Plaintiff also asserts that she was required to work approximately 80% of the time during her thirty minute uncompensated meal breaks. (Id. ¶¶ 11, 13). Hometown management encouraged plaintiff to perform meal break work, which included providing patient care, responding to

2

emergency situations, following supervisors' instructions, completing paperwork and other duties.  (Id. ¶¶ 13-14).  However, plaintiff contends that she was not compensated appropriately for the extra work because Hometown programmed their timekeeping system to automatically deduct a thirty minute meal break period from her daily total hours worked.  (Id. ¶¶ 12, 15).  Because of her personal experiences and conversations with staff, plaintiff believes that other Secure Health employees were also subjected to, and affected by, the same meal break policy.[1]  (Id. ¶ 16).

Additionally, plaintiff asserts that she was required to maintain her uniform outside of regular working hours.  (Id. ¶¶ 17-19).  Hometown management instructed her to perform, and witnessed the results of, the regular washing, spot cleaning, drying and ironing of her uniform and shoes.  (Id. ¶¶ 20, 22).  Although she completed between two and three hours of uniform maintenance each week, plaintiff was not paid accordingly.  (Id. ¶¶ 20, 23).  Because of her personal experiences and conversations with staff, plaintiff believes that other Secure Health

---

[1] Plaintiff limits the putative meal break subclass to include only Hometown and "introductory" Shenandoah employees because these employees received thirty minute uncompensated meal breaks.  (Doc. 23, Pl.'s Reply Br. at 9; Doc. 17-3, Ex. B, Hometown Nursing & Rehabilitation Center Emp. Handbook at 4, 9; 17-5, Ex. D, Shenandoah Nursing Center Emp. Handbook at 5, 8).  Employees at Shenandoah are considered "introductory" employees during the first four months of employment.  (Doc. 17-5, Ex. D, Shenandoah Nursing Center Emp. Handbook at 5).  Non-"introductory" Shenandoah and Mt. Carmel employees received compensated meal breaks  (Id.; Doc. 20, Def.'s Br. in Opp'n at 10).

employees were also subjected to, and affected by, the same uniform maintenance policy. (Id. ¶ 24).

Plaintiff claims that defendants violated the FLSA, by knowingly requiring her and other employees at Hometown, Mt. Carmel and Shenandoah to perform uncompensated (1) pre-shift (2) meal break and (3) uniform maintenance overtime work. Consequently, plaintiff moves to conditionally certify the above-captioned case as a collective action pursuant to 29 U.S.C. § 216(b). Because FLSA class actions are done on an opt-in basis (i.e. class members must elect to join the lawsuit), plaintiff seeks to send notice of this action to all similarly situated, non-exempt, hourly employees who are potentially members of the pre-shift, meal break and/or uniform maintenance subclasses. The parties were in discovery for six months prior to the instant motion, bringing this case to its current posture.

**Jurisdiction**

The instant suit is brought under the FLSA, which "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction . . . ." 29 U.S.C. § 216(b). Accordingly, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")

**Standard of Review**

The FLSA forbids employers from implementing a workweek of more than 40 hours unless overtime is paid for the time worked in excess. 29 U.S.C. § 207. The FLSA provides a private right of action to recover for violations of the FLSA, including a class action lawsuit. See 29 U.S.C. § 216(b). Section 216(b) provides in pertinent part:

> An action to recover the liability prescribed in either the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction *by any one or more employees for and in behalf of himself or themselves and other employees similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id. (emphasis added). The FLSA does not define the term "similarly situated," and neither the Third Circuit nor the Supreme Court provides guidance on how it should be applied. In response, district courts in the Third Circuit have developed a two-stage test. See, e.g., Villanueva-Bazaldua v. Trugreen Ltd. Partners, 479 F. Supp. 2d 411, 414-15 (D. Del. 2007).

The first stage is called the notice stage. Id. At this stage, the court determines whether notice should be sent to potential class members. Id. (citing Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). To determine whether notice is appropriate, courts generally examine the pleadings and affidavits of the parties. Id. (citing

Aquilino v. Home Depot, Inc., No. 04-4100, 2006 WL 2583563, at *1 (D.N.J. Sept. 7, 2006)).

District courts within the Third Circuit Court of Appeals differ in the level of proof required at the first stage. A few courts have found that "substantial allegations that the putative class members were together the victims of a single decision, policy or plan" are sufficient to establish the "similarly situated" requirement.[2] See, e.g., Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (quoting Sperling v. Hoffman La-Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988)). Other courts have required a "modest factual showing" that the similarly situated requirement is satisfied. See, e.g., Bosley v. Chubb Corp., No. 04-4598, 2005 WL 1334565, at *3-4 (E.D. Pa. June 3, 2005) (citing Smith, 2003 WL 22701017, at *2-3).

Courts that apply the latter standard are nonetheless careful not to delve into the merits of the case or determine issues of credibility. Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 63-64 (E.D. Pa. 2009). Determinations of credibility are appropriate at the second stage. Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001). At the second stage, after the court is

---

[2] This "substantial allegations" standard effectively renders conditional class certification automatic, as long as the words "other employees similarly situated" are contained in the complaint. Smith v. Sovereign Bancorp, Inc., No. 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003). Automatic conditional class certification "is at odds with the Supreme Court's recommendation to 'ascertain the contours of the [§ 216] action at the outset.'" Id. (quoting Hoffman La-Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989)).

6

more informed through discovery, the court performs a fact-specific inquiry of each class member and decides whether to decertify, or make final certification.  Id.  The present case concerns only a first stage inquiry.  We will join those courts that require a "modest factual showing" that the prospective class members are similarly-situated.[3]

**Discussion**

To grant plaintiff's motion for conditional class certification, the court must be convinced that plaintiff and the potential class members are "similarly situated" under the "modest factual showing" standard.  Bosley, 2005 WL 1334565, at *3 (citing Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991)).  Therefore, the granting of plaintiff's motion is appropriate only if plaintiff has satisfied her evidentiary burden of establishing a factual nexus between her circumstances and those of other members of the putative class.  Aquilino, 2006 WL 2583563, at *2.

Plaintiff submits evidence in support of her claim that defendants violated the FLSA by knowingly requiring her as well as other employees at Hometown, Mt. Carmel and Shenandoah to perform uncompensated (1) pre-shift (2) meal break and (3) uniform maintenance work pursuant to unofficial policies.  Defendants counter that plaintiff fails to provide the requisite factual basis from which the court can determine if "similarly situated" class members exist.  Accordingly, the court will examine

---

[3] The parties agreed at oral argument that the "modest factual showing" standard is applicable.  (Doc. 28, Oral Arg. Tr. at 28-29, 31).

plaintiff's evidence in support of the alleged FLSA violation and decide whether plaintiff satisfies the "modest factual showing" standard to warrant conditional certification.

After careful consideration of the record, the court finds that plaintiff presents sufficient evidence to establish that the putative (1) pre-shift, (2) meal break and (3) uniform maintenance work class members are "similarly situated" under the "modest factual showing" standard.  The evidence plaintiff presents includes: plaintiff's sworn declaration; common corporate policies found in employee handbooks; employee time cards; and defendants' answer.

Employee handbooks from Hometown, Mt. Carmel and Shenandoah contain a common "timeliness" policy requiring "[e]mployees . . . to report for work on time on a regular basis" or suffer potential disciplinary actions. (Doc. 17-3, Ex. B, Hometown Nursing & Rehabilitation Center Emp. Handbook (hereinafter "Hometown Handbook") at 8; 17-4, Ex. C, Emp. Handbook (hereinafter "Mt. Carmel Handbook") at 6; 17-5, Ex. D, Shenandoah Nursing Center Emp. Handbook (hereinafter "Shenandoah Handbook") at 17).  To comply with the "timeliness" policy, plaintiff and other Secure Health employees arrived at work approximately ten minutes early.  (Outlaw Decl. ¶¶ 4-6; Doc. 17.6, Ex. E, Hours Worked Detail Report (hereinafter "Time Cards")).  Defendants' timekeeping system tracked and recorded these early arrivals on employee time cards.  (Time Cards).

Hometown management encouraged plaintiff to perform pre-shift

8

work, which included receiving pass down instructions, meeting with supervisors, checking equipment, collecting pills for distribution to patients and other duties. (Outlaw Decl. ¶¶ 7-8). Plaintiff states that other employees were instructed to perform similar work under the same "timeliness" policy. (Id. ¶ 10). Defendants did not compensate employees engaging in pre-shift work because defendants "rounded down" employee pre-shift time before calculating pay. (Id. ¶ 9; Time Cards). The inclusion of the "rounded down" pre-shift time in the pay calculations would require defendants to compensate employees with overtime wages. Therefore, evidence in the record shows that Secure Health employees arrived at work early in accordance with the company "timeliness" policy, were instructed to work before their scheduled starting time and were not paid for this overtime.

Employee handbooks from Hometown and Shenandoah also contain a common meal break policy requiring all employees at Hometown and "introductory" Shenandoah employees to take a one half hour non-compensable lunch break.[4] (Hometown Handbook at 4, 9; Shenandoah Handbook at 5,15). Hometown management encouraged plaintiff to perform meal break work, which included providing patient care,

---

[4] Again, plaintiff limits the putative meal break subclass to include only Hometown and "introductory" Shenandoah employees because these employees received thirty minute uncompensated meal breaks. (Doc. 23, Pl.'s Reply Br. at 9). Employees at Shenandoah are considered "introductory" employees during the first four months of employment. (Shenandoah Handbook at 5).

9

responding to emergency situations, following supervisors' instructions, completing paperwork and other duties. (Outlaw Decl. ¶¶ 13-14). Plaintiff states that she worked 80% of the time during these breaks and that other employees were required to perform similar duties under the same meal break policy. (Id. ¶¶ 11, 13, 16).

Defendants did not compensate employees engaging in meal break work.[5] (Compl. ¶¶ 33, 40; Answer ¶¶ 30-42). Defendants automatically deducted thirty minutes for meal break time from the daily hours worked of their employees, and defendants did not include deducted meal break time when calculating pay. (Compl. ¶¶ 33, 40; Answer ¶¶ 30-42; Time Cards). The inclusion of the deducted time in the calculations would require defendants to pay employees overtime wages. Therefore, evidence in the record shows that defendants encouraged Secure Health employees to work during meal breaks, employees worked during some meal breaks and employees were not paid for this overtime.

Moreover, employee handbooks from Hometown, Mt. Carmel and Shenandoah contain a common uniform maintenance policy requiring employees to wear specific clothing and to keep that clothing neat and

---

[5] When answering a pleading, a defendant must "admit or deny the allegations asserted against it." FED. R. CIV. P. 8(b)(1)(B). An allegation is admitted if it is not denied. FED. R. CIV. P. 8(b)(6). Accordingly, defendants admit the following: Defendants did not compensate employees for meal break work, provide employees with appropriate uniform maintenance facilities or permit uniform maintenance activities during regular working hours, and defendants knew employees performed uniform maintenance work each week. (Compl. ¶¶ 33, 40, 45-46, 52; Answer ¶¶ 30-54).

clean. (Hometown Handbook at 13-14, Mt. Carmel Handbook at 2-5 , Shenandoah Handbook at 15). Defendants did not provide employees with washing or ironing facilities or permit uniform maintenance during regular working hours. (Compl. ¶¶ 45-46; Answer ¶¶ 43-54). To comply with the uniform maintenance policy, plaintiff states she performed between two and three hours of "off the clock" maintenance work each week, which included the washing, spot cleaning, drying and ironing of her uniform and shoes. (Outlaw Decl. ¶ 20, 23). Plaintiff also states that other employees were required to perform similar duties under the same uniform maintenance policy. (Outlaw Decl. ¶ 24 ).

Although defendants knew employees performed uniform maintenance work each week, defendants did not pay employees for this extra work. (Compl. ¶ 52; Answer ¶¶ 43-54; Time Cards). The inclusion of the uniform maintenance time in defendants' pay calculations would require defendants to compensate employees with overtime wages. Therefore, evidence in the record shows that Secure Health employees were required to wear specific clothing, appear neat and clean for work and perform uniform maintenance outside of regular working hours, and employees were not paid for this overtime.

Given the evidence of unpaid overtime work under unofficial policies, and the lenient "modest factual showing" standard, the court finds sufficient admissible evidence that plaintiff and the putative (1) pre-shift, (2) meal break and (3) uniform maintenance class members are "similarly situated."

11

See Bosley, 2005 WL 1334565 at *4-5 (finding that the "[p]laintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question" after noting that the plaintiffs presented a declaration and supporting documentation, including employee manuals).

Defendants oppose preliminary certification of the pre-shift and meal break work classes on the grounds that defendants maintained an overtime policy at the facilities requiring advanced approval for overtime work. (Doc. 20, Def.'s Br. in Opp'n (hereinafter "Opp.") at 7). Because plaintiff and the respective class members engaged in unauthorized pre-shift and meal break work, defendants argue they should not pay overtime wages. (Id.) However, the wage payments an employer owes its employees for hours worked are set by the FLSA, not by an employer's policies. The United States Department of Labor promulgated a series of regulations that give effect to the FLSA's rules concerning when wages are owed for hours worked. See 29 C.F.R. §§ 785.1-785.50. Because the Department of Labor's regulations provide that employers may not avoid the payment of wages by implementing policies against the performance of work, defendants' argument to the contrary does not convince the court. 29 C.F.R. § 785.13.

Defendants also argue that, if the court grants plaintiff's motion, the court should limit the class to include only other licensed practical nurses governed by the same rules and policies. (Opp. at 6). However, precedent shows that a plaintiff need not prove an absolute uniformity of facts with

12

every putative class member to satisfy the lenient standard for conditional certification. See Beauchamp v. Penn Mut. Life Ins. Co., No. 10-7170, 2011 WL 3268161, at *5 (E.D. Pa. July 29, 2011) (rejecting arguments that the court should deny conditional certification because potential opt-in plaintiffs held different jobs in different departments and were terminated at different times); Taylor v. Pittsburgh Mercy Health Sys., No. 09-377, 2009 WL 2003354, at *3 (W.D. Pa. July 7, 2009) (rejecting arguments that the court should limit conditional certification of a hospital facility to employees who worked in the same departments); Bishop v. AT & T Corp., 256 F.R.D. 503, 508-09 (W.D. Pa. 2009) (rejecting arguments that the court should deny conditional certification because potential class members worked at different geographical locations in offices with distinct operational procedures). The court finds defendants' argument unconvincing.

Defendants further contend that, if the court grants the instant motion, the class should temporally extend to include only employees working during plaintiff's term of employment from October 6, 2010 to January 27, 2011.  (Opp. at 6).  Neither the facts nor the law support defendants' argument with respect to limiting the class in this manner. Rather, the court finds that plaintiff alleged a willful FLSA violation by claiming that defendants *knowingly* required the performance of uncompensated overtime work.  (Compl. ¶ 1).  When the plaintiffs in a FLSA case allege facts, which taken as true, demonstrate that the defendant's actions were "willful," the statute of limitation is three years.  29

13

U.S.C. § 255(a); see also Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 273 (3d Cir. 2010) ("Whether a violation of the FLSA is willful is a question of fact that is reviewed for clear error." (citing Bianchi Trison Corp. v. Chao, 409 F.3d 196, 208 (3d Cir. 2005)).  Accordingly at this stage in the litigation, the court will permit plaintiff to send notice of this action to putative class members who worked for defendants within the past three years.

**Conclusion**

For the reasons stated above, and pursuant to the FLSA, the court will grant plaintiff's motion for the conditional class certification of similarly situated, non-exempt, hourly employees who worked at Hometown, Mt. Carmel and Shenandoah.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GINGER OUTLAW, for herself and all others similarly situated,** | : | No. 3:11cv602 |
| **Plaintiff** | : | (Judge Munley) |
| **v.** | : | |
| **SECURE HEALTH L.P. and HOMETOWN NURSING & REHABILITATION CENTER,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW,** to wit, this 2nd day of August 2012, it is hereby **ORDERED** as follows:

1. Plaintiff's motion for the conditional class certification of similarly situated persons pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) (Doc. 17), is **GRANTED**;

2. Plaintiff is **DIRECTED** to file a proposed notice form within seven days of the date of this Order;

3. Defendants are **DIRECTED** to file objections, if any, to plaintiff's proposed notice form within seven days of its filing; and

4. Defendants shall, within ten days of this Order, provide plaintiff with the names and last known addresses of all non-exempt, hourly employees who worked at Hometown, Mt. Carmel and Shenandoah within the last three years.

**BY THE COURT:**

  **s/ James M. Munley**
**JUDGE JAMES M. MUNLEY
United States District Court**